# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| SCOTT BOERGERT, individually and on behalf of all others, | )<br>)<br>) |
| Plaintiffs, | )<br>) No. 2:15-cv-04185-NKL |
| v. | )<br>) |
| KELLY SERVICES, INC., | )<br>) |
| Defendant. | ) |

**ORDER**

Defendant Kelly Services, Inc. moves under Fed. R. Civ. P. 12(b)(1) to dismiss this Fair Credit Reporting Act case in its entirety for lack of subject matter jurisdiction, based on the United States Supreme Court's recent decision in *Spokeo v. Robins,* 136 S.Ct. 1540 (2016). Doc. 40. The motion is granted.

**I.    Background[1]**

Kelly Services routinely obtains information contained in consumer reports to conduct background checks on prospective and current employees, and uses the information in the reports as the basis for adverse employment action against such persons, such as refusing to hire them or deciding to fire them.

Plaintiff Scott Boergert applied to work for Kelly Services. During the hiring process, he signed a form, which Kelly Services then used to obtain his consumer report from another

---

[1] The challenge to the Court's subject matter jurisdiction involves a facial attack on Boergert's complaint, Doc. 1, inasmuch as no affidavits or other evidence have been submitted in connection with Kelly Services' motion under Rule 12(b)(1). Therefore, the Court applies the same standards it would apply to a motion to dismiss under Rule 12(b)(6), and accepts as true the factual allegations contained in the complaint. *See Carlson v. GameStop, Inc.,* 833 F.3d 903, 908 (8th Cir. 2016).

company.  Kelly Services hired him and assigned him to work at Kraft.  But then Kelly Services fired him, telling him it was because of information in his consumer report and that he was no longer eligible for employment with Kelly Services.

Boergert alleges that Kelly Services' disclosure form violated the FCRA because the form did not contain "clear and conspicuous disclosure in writing in a document that consisted solely of the disclosure that a consumer report may be obtained for employment purposes," and because it "contained extraneous [and inaccurate] information in violation of the FCRA." Doc. 1-1, p. 19 of 35; *see also id.* at pp. 31-32 of 35 (Count II).  Boergert alleges that Kelly Services further violated the FCRA by failing to give him a copy of the consumer report, and notice and opportunity to correct any inaccuracy in it, before firing him.  *Id.* at pp. 29-31 of 35 (Count I).  He also alleges that Kelly Services' "multiple violations of the FCRA combined with its knowledge of the requirement of the FCRA" demonstrate its "violations were willful." *Id.* at p. 26 of 35.  Boergert does not claim that the information in the consumer report was inaccurate.

## II. Discussion

Kelly Services argues that Boergert has no standing to pursue an improper disclosure claim or an adverse action claim because he merely alleges bare procedural or technical violations of his statutory rights, divorced from any concrete harm.  Boergert responds that *Spokeo* did not alter constitutional requirements for standing, and that he has alleged two concrete injuries:  violation of his right to privacy and an informational injury.

### A. *Spokeo* and Standing

In *Spokeo*, the Supreme Court reaffirmed that to have Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." 136 S. Ct. at

1547 (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)). Here, it is undisputed that the alleged statutory violations are traceable to Kelly Services' conduct, and that the alleged violations are redressable by statutory damages. Accordingly, the remainder of the discussion on the standing issue is addressed solely to the requirement of injury in fact.

To establish injury in fact, a plaintiff must have suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (citing *Lujan*, 504 U.S. at 560). To be "particularized," an injury "'must affect the plaintiff in a personal and individual way[.]'" *Id.* (citing *Lujan*, 504 U.S. at 560 n.1). Here, it is undisputed that Boergert has alleged a particularized injury.

The Supreme Court in *Spokeo* distilled several "general principles" from its prior cases with respect to concreteness. *Id.* at 1549-50. A concrete injury is one that is "'real,' and not 'abstract.'" *Id.* at 1548 (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 472 (1971), and RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 305 (1967)). Tangible injuries plainly satisfy this requirement. *Id.* at 1549. "[N]evertheless," intangible injuries may also "be concrete." *Id.* In evaluating whether an intangible injury satisfies the "concreteness" requirement, the *Spokeo* Court identified two important considerations: (1) "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts[;]" and (2) the judgment of Congress, which "'has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" *Id.* (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in judgment)).

The Supreme Court then elaborated on the connection between statutory standing and concrete injury. First, the Court explained that "Article III standing requires a concrete injury

3

even in the context of a statutory violation[.]" *Id*. (citing *Summers v. Earth Island Institute*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation...is insufficient to create Article III standing")). Therefore, "[a plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.*

At the same time, the Court observed, in cases where "harms may be difficult to prove or measure[,]" "the violation of a procedural right granted by statute can be sufficient... [and] a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." *Id*. at 1549 (citing *Federal Election Comm'n v. Akins*, 524 U.S. 11, 20–25 (1998), and *Public Citizen v. Department of Justice*, 491 U.S. 440, 449 (1989)). The Supreme Court noted that although one of the FCRA's purposes is to protect against inaccurate credit reporting, "not all inaccuracies cause harm or present any risk of harm[.]" *Id*. at 1550.

### B. The FCRA

As relevant here, the FCRA provides that the employer must, in advance, provide the consumer with a clear and conspicuous written disclosure, and obtain the consumer's consent to obtain a consumer report:

> [A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless: (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

§ 1681b(b)(2). The consumer is also provided the right to review and discuss the content of a report with the prospective employer, before adverse action is taken against him or her based on

the report:

> In using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates: (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under this subchapter, as presented by the Bureau under Section 1681g(c)(3) of this title.

§ 1681b(b)(3).

The purpose of these and other provisions of the FCRA is to ensure fair and accurate credit reporting, protect consumer privacy, and promote efficiency in the banking system. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007), and 15 U.S.C. § 1681 (Congressional findings and statement of purpose). For a thorough discussion of the FCRA's legislative history, see *Thomas v. FTS USA, LLC,* 2016 WL 3653878 (E.D. Va. June 30, 2016).

### C. Count II—Improper Disclosure

Count II, for improper disclosure, is based on §1681b(b)(2), which forbids a person from procuring a consumer report without obtaining the consumer's express written consent in advance. Furthermore, the consumer's consent must be made on a single document that contains only required information that is "clear and conspicuous." Boergert alleges Kelly Services violated §1681b(b)(2) by giving him a document that contained extraneous information, some of which is inaccurate. He claims he was therefore harmed because his privacy was invaded and he sustained an informational injury.

#### 1. Right to privacy

Boergert is correct that he has a substantive right to keep his consumer report private. Only if he consents can a consumer report be released. But Boergert did sign a consent form authorizing the release of his consumer report to Kelly Services. He tries to invalidate his

5

consent by arguing it is not in the form mandated by Congress because the consent form contains incorrect information and extraneous information. Nonetheless, he does not allege that he or a reasonable person would be confused by the extraneous information. Nor does he allege that he would not have signed it had he known some information was inaccurate. Instead, the crux of his complaint is that the consent form did not technically comply with the requirements of the FCRA. This is the kind of bare procedural violation that the Supreme Court described in *Spokeo*. *See also Shoots, et al. v. iQor Holdings US Inc.,* 2016 WL 6090723, at *5 (D. Minn. Oct. 18, 2016) (same); *Larroque v. First Advantage LNS Screening Sols., Inc.*, 2016 WL 4577257 (N.D. Cal. Sept. 2, 2016) (same); *Groshek v. Time Warner Cable, Inc.*, 2016 WL 4203506 (E.D. Wis. Aug. 9, 2016) (same); and *Smith v. Ohio State Univ.*, 2016 WL 3182675 (S.D. Ohio June 8, 2016) (same). Therefore, on this record, Boergert's right to privacy argument fails.

### 2. Informational injury

Boergert's alleged informational injury is also based on the consent form containing inaccurate and extraneous information. In support of his informational injury claim, Boergert relies on *Federal Election Comm'n v. Akins,* 524 U.S. 11 (1998), and *Public Citizen v. Dep't of Justice,* 491 U.S. 440 (1989). Both of these cases were cited by the U.S. Supreme Court in *Spokeo* as examples of a concrete harm being suffered when information authorized by statute was not supplied. In *Public Citizen,* the harm was the inability of the plaintiff to monitor the judiciary because the ABA refused to release documents that Congressional statutes made open records. In *Akins,* the statutorily required information involved the American Israel Public Affairs Commission.

The Court agrees that the deprivation of statutorily mandated information can cause an intangible but concrete harm, if that harm is of the type Congress sought to prevent. Boergert,

6

Case 2:15-cv-04185-NKL   Document 87   Filed 11/14/16   Page 6 of 9

however, has not alleged that Kelly Services' disclosure form did not contain the information required by the FCRA. Rather, he claims it was not in the format required by the statute. It contained too much information. Further, although it permitted Kelly Services to obtain consumer report information after employment terminated, it appears this would not be a sufficiently concrete injury given *Braitberg v. Charter Commc'ns, Inc.,* 836 F.3d 925, 930-31 (8th Cir. 2016), which found an analogous allegation to be a "bare procedural violation." Absent some additional allegation of harm, the Court cannot find an informational injury based on the current record.

### D.     Count I—Adverse Action

Count I, the adverse action claim, is based on § 1681b(b)(3), which provides a consumer the right to receive a copy of the report, and review and discuss its content with the prospective employer, before adverse action is taken against him or her based on the report. Boergert alleges he was fired without receiving notice and the opportunity to discuss the content of the report with Kelly Services. Kelly Services argues that the violation of the FCRA is merely technical, inasmuch as Boergert does not claim the information contained in the report was untrue, and that he therefore lacks standing to pursue the adverse action claim. Boergert responds that he suffered a concrete, informational injury and therefore he has standing.

While Boergert has been deprived of statutorily required information, he has not shown any injury beyond the lack of access to the required information. He has not even alleged that he had a basis for challenging the information in the consumer report, which is the type of harm Congress was intending to prevent. *See Spokeo*, 136 S.Ct. at 1550 ("Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk.")

7

Further, the Eighth Circuit in *Braitberg* seemed to suggest that Article III standing required something more than a procedural violation, superseding *Hammer v. Sam's East Inc.*, 754 F.3d 492 (8th Cir. 2014), and *Charvat v. Mut. First Fed. Credit Union,* 725 F.3d 819 (8th Cir. 2013), two cases this Court has previously relied on to find subject matter jurisdiction in these types of cases. Therefore, the Court is reluctant to find that this informational injury is sufficient to show a concrete injury sufficient to establish subject matter jurisdiction.

Boergert additionally suggests that he suffered an injury sufficient to establish standing under the adverse action count because he would have been able to continue working for at least some amount of time had Kelly Services allowed him time to dispute the accuracy of the report before terminating him. Doc. 44, p. 22 of 26, n.8. In the complaint, he alleges that Kelly Services "violated the FCRA by not providing [him] with proper notice prior to the adverse action" and "a reasonable time to cure any inaccuracies within the consumer report[]…." Doc. 1-1, pp. 25 and 30 of 35. But as noted above, Boergert does not claim that the information in the consumer report was inaccurate. Nor does Boergert claim that Kelly Services would have reached a different decision had it given him a reasonable amount of time before taking the adverse action. Absent any allegation that the information in the consumer report was inaccurate, or that compliance with the FCRA's pre-adverse action notice requirement would have resulted in Kelly Services reaching a different conclusion about his qualification for employment, any loss he suffered could not have resulted from Kelly Services' failure to give him a reasonable amount of time to address what was revealed in his criminal background report. *See Tyus v. United States Postal Serv.*, 2016 WL 6108942, at *7 (E.D. Wis. Oct. 19, 2016) (plaintiff claimed financial and other injury under the FRCA due to lack of pre-adverse action notice, but he did not allege the consumer report was inaccurate or that the employer would have

reached a different decision had he been given notice; plaintiff therefore lacked standing); *Union v. Interstate Commerce Comm'n,* 891 F.2d 908, 919 (D.C. Cir. 1989) (plaintiff lacked standing to pursue a claim regarding an alleged procedural irregularity in the adoption of a rule; the alleged procedural irregularity was "too tenuously connected to a potential substantive injury, in that there was no reason to believe the outcome would have been different even if" the procedure had been correctly followed). Accordingly, the Court cannot find an injury sufficient to establish standing under the adverse action count based on the current record.

## III. Conclusion

Defendant Kelly Services' motion to dismiss, Doc. 40, is granted.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: November 14, 2016
Jefferson City, Missouri